**Bradley H. CARR, Appellant (Respondent Below),**

v.

**Suzanne CARR, Appellee (Petitioner Below).**

No. 79S04–9210–CV–838.

Supreme Court of Indiana.

Oct. 16, 1992.

Carolyn S. Holder, Holder & Davis, Lafayette, for appellee.

Lisa V. Schrader, Heide Sandy Deets Kennedy Schrader & Antalis, Lafayette, for appellant.

SHEPARD, Chief Justice.

We conclude in this case that an order for college expenses which allocates the expense between the parents in a way disproportionate to their resources is clearly erroneous. We reverse and remand.

## Procedural History

Petitioner Suzanne Carr ("mother") instituted the present action asking that respondent Bradley H. Carr ("father") assume the educational expenses of their daughter Jody Lee, age eighteen. After hearing evidence, the trial court granted the petition, finding that a substantial and continuing change of circumstances had occurred making the existing support order unreasonable, that Jody Lee Carr had the aptitude and ability for the college education requested, and that the parties could reasonably finance such an education.

The court ordered the father to pay all reasonable and necessary tuition, room and board, fees, books, and supplies for Jody Lee at a state-supported institution in Indiana, said sum to be reduced by any non-repayable grants, scholarships or other benefits awarded Jody as a result of her enrollment at a college or university. The court also ordered the mother to pay all remaining miscellaneous college educational expenses for Jody.

Finally, the order provided for abatement of child support while Jody attended college full time and for reduction of support during vacation periods in recognition of Jody's reasonable probability of employment during the summer months.

Following motions to correct errors, the court entered a stipulation and agreed order limiting the obligation to a period of four years following Jody's graduation from high school. Father appealed and the Court of Appeals affirmed. *Carr v. Carr* (1991), Ind.App., 580 N.E.2d 966. We grant father's petition for transfer. The sole issue presented is whether the trial court's apportionment of college expenses was erroneous.

## Facts

The marriage of Suzanne and Bradley Carr was dissolved on October 5, 1972. Suzanne was awarded custody of the parties' minor child, Jody Lee Carr, and Bradley was ordered to make child support payments of $20 per week. Bradley's child support obligation was increased to $40 per week commencing November 1980.

On June 12, 1990, Suzanne filed a Petition to Modify Divorce Decree, requesting an order for the payment of college expenses and for reasonable attorney's fees and costs. At the hearing held pursuant to this petition the evidence showed that Jody had been accepted into Indiana University at Bloomington and that she was preparing to attend.

Mother offered into evidence a catalog from Indiana University which estimated the total costs for Jody as a resident freshman as $6,780. This total included $5,443 for "fixed" expenses (tuition, room and board) and books, and $1,337 for "miscellaneous" expenses (laundry, snacks, telephone, transportation, etc.). At the hearing, mother testified that the university's estimate of fixed costs had increased since the printing of the catalog from $5,443 to approximately $5,623.

Mother testified that Jody would likely be eligible for financial aid; the form and amount was yet to be determined. She had not applied for student loans. Although Jody had worked in the past, as of the date of the hearing she was not employed. The child's savings, comprised predominately of earnings from previous jobs, were estimated by her mother to be $500.

At the time of the hearing, father testified that his assets consisted of land in

which he had invested $26,000 for various improvements, a savings account containing $5,130, and an employer-maintained retirement fund of $64,337. It appears from the record that $27,330 of the money in the retirement fund would be subject to payment of tax and penalties if withdrawn. Father also has the potential to secure a pension from his employer.

Mother's financial declarations disclosed that her assets consisted primarily of a home with an estimated value of $56,000, subject to a remaining first mortgage of $25,000 and a small second mortgage. She also indicated that she had accrued some equity in her 1988 Subaru and that she possessed a savings account of about $1,500.

The record indicates that father reported wages for 1989 of $25,498. Mother's wages and gross sales totaled $26,339. Father's adjusted gross income for federal income tax purposes was given as $27,627 versus $19,245 for mother.[1] Mother, however, predicted a drop in future income as a result of the loss of the salaried portion of her commission/salary position.

### Standard of Review

Father asserts that the terms of the order modifying the support provisions of the Carr's dissolution decree constitute an abuse of discretion. We traditionally reviewed trial court determinations of support obligations under an abuse of discretion standard. This has recently been modified, however, by the adoption of the Indiana Child Support Guidelines (Guidelines). In *Matter of Paternity of Humphrey* (1991), Ind., 583 N.E.2d 133, we held that a trial court's support order would be disturbed only when it was clearly erroneous.

■ We hold that when the apportionment of college expenses is at issue, the clearly erroneous standard articulated in *Humphrey* governs appellate review. When the decision to order the payment of extraordinary educational expenses is challenged, however, review should continue to be for abuse of discretion. We believe that this approach strikes the proper balance between the need for latitude in the area of college expense orders, as outlined in *Neudecker v. Neudecker* (1991), Ind., 577 N.E.2d 960, and the need for consistent application of the child support guidelines.

Accordingly, because this appeal implicates only the apportionment of Jody's college expenses, we will affirm the trial court unless the decision is clearly against the logic and effect of the facts and circumstances which were before it. *Matter of Paternity of Humphrey*, 583 N.E.2d at 134.

### Discussion

Indiana Code § 31–1–11.5–12(b)(1) provides that, in appropriate cases, a decree may require the support of a child's higher education.[2] *Gower v. Gower* (1981), Ind. App., 427 N.E.2d 703. Section 12(b)(1) hinges college expense orders on a review of the aptitude and ability of the child and the means of the parties. In *Neudecker* (1991), Ind., 577 N.E.2d at 962, we clarified that this review is to be conducted within the statutory framework set out in section 12(a). In this regard, the "standard of living the child would have enjoyed had the marriage not been dissolved," Ind.Code § 31–1–11.5–12(a)(2), means whether and to what extent the parents, if still married, would have contributed to the child's college expenses. *Neudecker*, 577 N.E.2d at 962.

1. Although "total income from all sources," as outlined in our child support guidelines, and not gross income for tax purposes, is relevant for purposes of support determinations, Ind. Child Support Guidelines 3A, Commentary, *Indiana Rules of Court, State and Federal* 315 (West 1992), in the instant case "total income" and "adjusted gross income" appear to be substantially co-terminous.

2. The history of this judicially crafted provision, now codified by our legislature, is sketched in *Thiele v. Thiele* (1985), Ind.App., 479 N.E.2d 1324. In *Neudecker v. Neudecker* (1991), Ind., 577 N.E.2d 960, we upheld this statute against an equal protection challenge brought by a noncustodial parent. Our decision in *Neudecker* disposes of the equal protection claim appellant Bradley H. Carr has presented in this case.

The provisions of Ind.Code § 31–1–11.5–12 are amplified by the Indiana Child Support Guidelines. The guidelines are to be utilized in the resolution of all petitions to determine or modify support. *Gielsdorf-Aliah v. Aliah* (1990), Ind.App., 560 N.E.2d 1275, 1277. Higher education costs in particular are addressed in Child Supp. G. 3(E)(3) which concerns "extraordinary education expenses." *See generally Reeves v. Reeves* (1992), Ind.App., 584 N.E.2d 589 (petition to modify decree to include an order for college expenses resolved under the guidelines.)

Guideline 3(E)(3) provides that "in considering extraordinary educational expenses, the Court should consider all sources of income and education assistance available to the children and parents." The commentary accompanying the foregoing guidelines also advises judges to "consider scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. The student should be expected to actually apply for available aid, and a failure to do so should be considered when establishing educational expenses." Finally, the commentary encourages the avoidance of duplicative support and college expense orders.

A defining feature of the guidelines and Ind.Code § 31–1–11.5–12 is the premise that children should receive the same proportion of parental income after a dissolution as they would have received had the family remained intact. This premise has been effectuated through the adoption of the "income shares model" whereby child support obligations are prorated between the parents, based on their proportionate share of income. Guideline 1, Commentary. Absent a finding by the trial court that such a disposition would be unfair, we would expect this result to obtain in orders decreeing the payment of college expenses.[3]

In the case at bar, no justification appears in either the record or the order for the dramatically disparate treatment afforded the parties by the trial court. The mother and the father have adjusted gross incomes of approximately $19,000 and $28,000 respectively. Each possesses a comparable amount of equity in their realty. Father, however, possesses greater savings than does mother. Clearly their resources are not at parity. While the statutes and our guidelines do not require apportionment based on precise parity, they do require rough proportionality. It is not possible for us to conclude that the trial court recognized this when it apportioned in excess of 80% of Jody's educational costs ($5,623 of the $6,960) to her father.

We also find that the trial court failed to attach proper weight to the prospect that Jody might assume some of the costs of her education. The order did not place any responsibility on her to actually seek grants, loans or employment. Moreover, while the order provides for the contingency of non-repayable aid, no remitment is prescribed should loans be received. The guidelines and the statute contemplate that these cost-reducing measures will be factored in to college expense orders where their potential is raised by the record.

In view of the foregoing, we reverse the trial court and remand the cause for reconsideration of the apportionment of Jody's college expenses consistent with this opinion.

DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents without opinion.

---

**3.** Guideline 3(E)(3) allows extraordinary education expenses to be included in the determination or modification of child support or to be ordered separately and distinctly from child support. The Court of Appeals, in affirming the trial court, appears to have relied on the erroneous belief that the principles of our child support guidelines apply with less force when extraordinary educational expenses are ordered separately from child support. *Carr,* 580 N.E.2d at 967–68. Although we agree that trial courts must have "discretion to tailor a child support award to the circumstances," *id.,* this discretion is to be exercised in a way consistent with the guidelines.