**In re the Marriage of Lori L. CLAYPOOL n/k/a Lori L. Walsko, Appellant–Petitioner,**

**v.**

**Glenn J. CLAYPOOL, Appellee–Respondent.**

No. 45A04–9808–CV–424.

Court of Appeals of Indiana.

July 21, 1999.

Rehearing Denied Sept. 21, 1999.

Edward P. Grimmer, Crown Point, Indiana, Attorney for Appellant.

Melanie M. Sterba, Jill S. Swope, Wieser & Sterba, Schererville, Indiana, Attorney for Appellee.

## OPINION

STATON, Judge

Lori L. (Claypool) Walsko ("Mother") appeals from the trial court's order following a post-dissolution proceeding to modify the child support obligations of Glenn Claypool ("Father"). Lori raises several issues on appeal, which we restate as:

I. Whether the trial court erred by deviating from the child support guidelines and abating support for the parties' two children.

II. Whether the trial court erred by abating support retroactive to the date Father filed his Petition for Modification.

III. Whether the trial court erred by ordering that the children exhaust all available financial aid, including student loans, to cover college expenses before Mother and Father are required to contribute to said expenses.

IV. Whether the trial court erred by awarding attorney fees to Father.

We reverse and remand.

Father and Mother were granted a Dissolution of Marriage in 1984. Two children were born of the marriage, Son and Daughter. Daughter has been attending college away from home since the fall of 1995. Daughter returned to Mother's home during the summer vacation of 1996 but has not lived there since. An order addressing the payment of Daughter's post-secondary expenses was entered on August 3, 1995. This order provided that college expenses not covered by grants and financial aid were to be paid by Mother and Father in proportion to their incomes. Daughter was required to apply for all available financial aid; however, she was not required to obtain any loans. Additionally, the order provided that support paid to Mother by Father for Daughter was abated by 50% while she was away from home attending college.

Son began attending college in the fall of 1996. On July 26, 1996, Father filed a Verified Petition for Modification requesting that his child support obligation abate in total during periods that the children were not residing with Mother. Father also requested that Son and Daughter be required to apply for all financial assistance, including student loans, available to them to pay college expenses before Father and Mother were required to contribute.

Father's Petition for Modification was set for hearing on December 5, 1996. However, this date was continued due to Mother's

counsel's vacation. When Father learned of the continuance, he filed a motion to hold support payments in the clerk's office pending final resolution. This motion was granted on November 27, 1996.

A hearing on the issues commenced on May 28, 1997, but was reset for conclusion of the evidence on November 19, 1997. At the conclusion of the May 28, 1997 hearing, the trial court released Father from his weekly child support obligations pending final resolution of the issues. The November 19, 1997 hearing was continued due to Mother's counsel's sudden illness and was rescheduled for April 16, 1998, at which time the presentation of evidence concluded.

On July 10, 1998, the trial court entered its findings and conclusions and ordered, *inter alia*, that: (1) Daughter was emancipated; (2) neither party was responsible for payment of any further child support obligation to the other party; (3) Son and Daughter would be required to exhaust all financial aid, including student loans, before Mother and Father would be required to contribute to college expenses in proportion to their respective incomes; (4) Father was awarded the funds held by the clerk's office; (5) Mother was to repay Father $3,544.92, the amount of support received by Mother after Father filed his Petition for Modification; (5) Father was awarded $6,000.00 in attorney fees from Mother. It is from this order that Mother appeals. Additional facts will be provided as necessary.

## I.

### Deviation from Child Support Guidelines

■ Mother contends that the trial court erred by deviating from the child support guidelines and terminating Father's obligation to provide any traditional child support to Mother. Initially, we note that the issue of continuing child support payments applies only to Son, as the trial court properly found that Daughter was emancipated for traditional child support purposes pursuant to IND.CODE § 31–16–6–6 (1998).[1]

■ On review of modification of child support, the trial court's judgment will be affirmed unless clearly erroneous. *Weiss v.*

*Frick,* 693 N.E.2d 588, 590 (Ind.Ct.App.1998), *trans. denied.* A judgment is not clearly erroneous unless it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

■ The Indiana Child Support Guidelines provide a rebuttable presumption that the amount of child support that results from the application of the guidelines is the correct amount of child support to be awarded. *Talarico v. Smithson,* 579 N.E.2d 671, 672 (Ind.Ct.App.1991). However, the commentary to Ind. Child Supp. G. 1 provides that "there is room for flexibility" in determining support. If a judge believes that application of the guideline amount would be unreasonable, unjust, or inappropriate, a finding must be made that sets forth the reasons for deviating from the guideline amount. The finding need not be as formal as findings of fact and conclusions of law; however, it must articulate the judge's reasoning. *Id.*

In the instant case, the trial court found that the guideline amount of support for Son is $205.59 per week when he is residing with Mother. However, the trial court terminated Father's obligation to pay any child support. As justification for the termination of Father's support obligation, the trial court reasoned, *inter alia*, that Son has been away at college since July of 1996 and only returns to Mother's home for any extended period during summer vacations, during which he is employed full-time.

■ Although we conclude that deviation from the guideline amount may be justified, the termination of Father's support obligation, without a specific finding that Son was emancipated, was clearly erroneous. Parents have both a common law and a statutory duty to support their minor children. Further, IC 31–16–6–6 mandates that this duty continue until the children reach the age of twenty-one, unless any of the following conditions occur:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of

---

1. Daughter turned twenty-one years old on November 22, 1997.

emancipation, although an order for educational needs may continue in effect until further order of the court.

\* \* \*

■ (3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary or postsecondary school for the prior four (4) months and is not enrolled in a secondary or postsecondary school; and

(C) is or is capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) has joined the United States armed services;

(2) has married; or

(3) is not under the care or control of:

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate child support.

IC 31–16–6–6. Son is not twenty-one, is attending college full-time during the school year, resides with Mother during summer vacations, and is not capable of supporting

himself. Thus, the trial court's decision to terminate Father's support obligation was clearly erroneous.[2] Accordingly, we remand for determination of child support for Son.[3] Should the trial court decide to deviate from the guideline amount, it shall set forth its reasons for doing so.

II.

*Retroactive Termination of Support*

The trial court terminated support retroactive to July 26, 1996, the date Father filed his Petition for Modification. Accordingly, Mother was ordered to refund $3,544.92 to Father, the amount Father paid to Mother between the filing of his Petition for Modification and the trial court's entry of the order to hold support in the clerk's office on November 27, 1996. The trial court also awarded Father the funds that accrued in the clerk's office between November 27, 1996 and its order abating support pending final resolution on May 28, 1997.

■ Mother argues that the termination of support retroactive to July 26, 1996 was an abuse of discretion. We agree. The trial court terminated Father's obligation to support his children retroactive to a date when neither child was emancipated. As previously discussed, termination of child support prior to a child's emancipation is inappropriate. The trial court abused its discretion by terminating support retroactive to the date Father filed his Petition for Modification. Accordingly, the trial court's order that Mother pay Father $3,544.92 and its award to Father of all funds held by the clerk's office pending resolution of the matter cannot stand.[4]

**2.** We recognize that the trial court's order contemplates that Father will, indeed, continue to provide support to Son if he requires "any further financial assistance." However, in terminating Father's obligation to make specific payments for Son's support, the trial court deprived Son of any assurance of support and rendered Father's duty to support him unenforceable. Too, the trial court's order ignores the respective financial abilities of Mother and Father to contribute to Son's support, thereby completely disregarding the child support guidelines.

**3.** We leave to the sound discretion of the trial court the determination of what abatement of child support is appropriate when Son is not residing with Mother.

**4.** We do not hold that the modification of child support as determined on remand may not be applied retroactively, so long as it is consistent with this opinion and with the child support guidelines. We leave this determination to the discretion of the trial court. The trial court's determination of child support and its determination of the effective date of the modification on remand will guide the trial court's distribution of the money paid to Mother or held by the clerk's office during the pendency of this matter. It will also affect Father's obligation to pay child support from the date it was abated on May 28, 1997.

### III.

#### College Education Expenses

▮ Mother contests the trial court's apportionment of Son's and Daughter's post-secondary education expenses. Specifically, Mother argues that the requirement that the children exhaust all available student loans, without any limit to their total potential contribution, has effectively placed the entire cost of the children's college education on the children. When the apportionment of college expenses is at issue, the trial court's judgment will be affirmed unless it is clearly erroneous. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind.1992). A judgment is not clearly erroneous unless it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

▮ IND.CODE. § 31–16–6–2 (1998)[5] authorizes a court to order parental contribution to a child's post-secondary education. This is a matter left to the trial court's discretion. *Skalon v. Skalon–Gayer*, 695 N.E.2d 953, 956 (Ind.Ct.App.1997). Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate. *Id.*

▮ The trial court's review of whether to enter an order for post-secondary education expenses is to be conducted within the statutory framework set out in IND.CODE § 31–16–6–1 (1998).[6] *Carr*, 600 N.E.2d at 945 (citing *Neudecker v. Neudecker*, 577 N.E.2d 960, 962 (Ind.1991)). In this regard, the "standard of living the child would have enjoyed had the marriage not been dissolved" means whether and to what extent the parents, if still married, would have contributed to the child's college expenses. *Id.* If the trial court determines that an order for college expenses is appropriate, the parents' contributions shall be roughly proportional to their respective incomes. *Id.* at 946.

▮ The trial court may also allocate a portion of college expenses to the child. *Skalon*, 695 N.E.2d at 956. IC 31–16–6–2(a)(1)(B) specifically contemplates that the trial court should take into account the child's reasonable ability to contribute to educational expenses through work and sources of financial aid, including student loans. The Indiana Child Support Guidelines also address student contribution to higher education costs:

> [T]he court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.
>
> If the Court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These sources of assistance should be credited to the child's share of the educational expense.

Ind. Child. Supp. G. 6.[7] We interpret this guideline to mean that the trial court should first determine how much of the total expense may reasonably be borne by the child and how much should be borne by the parents.[8] The parents' total portion should be divided between them in proportion to their resources. When considering the various cost-reducing programs available to the child and what the child may reasonably be expected to contribute, the trial court should take heed of the differences between non-reimbursable financial aid, such as scholarships and grants, and student loans, which place a financial burden on the child.

---

**5.** Formerly IND.CODE § 31–1–11.5–12 (1993).

**6.** Formerly IND.CODE § 31–1–11.5–12 (1993). IC 31–16–6–1 provides that support should be determined in light of the standard of living the child would have enjoyed if the marriage had not been dissolved.

**7.** Guideline 6 was amended effective July 1, 1998. Post-secondary educational expenses were formerly addressed in Guideline 3(E)(3).

**8.** In some circumstances the trial court may find that the child cannot be reasonably expected to contribute anything to his college expenses beyond non-reimbursable funding such as scholarships and grants.

■ In the instant case, the trial court did not make a finding with respect to the extent that Mother and Father would have contributed to the children's college expenses if the marriage had remained intact, nor does .the trial court's order reflect the group effort approach espoused in the guidelines. The trial court ordered Son and Daughter to exhaust all means of financial assistance available to them, including grants, scholarships, and student loans, to finance their college educations, with the remainder of any college expenses to be paid 77% by Father and 23% by Mother, in proportion to their incomes. The trial court's order fails to define what portion of the total expense the children are responsible for and potentially makes them responsible for 100% of their college education, regardless of the source of their financial aid.[9] Requiring Son and Daughter to exhaust all forms of non-reimbursable financial aid places no financial burden on the child and is to the advantage of all parties. However, requiring the children to acquire student loans without placing any limit on either the amount of loans or on the children's total contribution, considering all forms of aid, is clearly erroneous. We, thus, remand to the trial court for re-apportionment of Son's and Daughter's college expenses.

## IV.

### Attorney Fees

■ Mother contends that the trial court erred in awarding Father $6,000.00 in attorney fees. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney fees. IND. CODE § 31–16–11–1 (1998).[10] The trial court has broad discretion in awarding attorney fees. *Selke v. Selke,* 600 N.E.2d 100, 102 (Ind.1992). We will reverse the trial court's decision if the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

■ In assessing attorney fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award. *Id.* In addition, any misconduct on the part of one of the parties that directly results in the other party incurring additional fees may be taken into consideration. *In re Marriage of Lewis,* 638 N.E.2d 859, 861 (Ind.Ct.App.1994).

Here, the trial court ordered Mother to pay $6,000.00 of Father's nearly $9,000.00 attorney fees. The trial court's order reveals that it based that decision on acts by Mother that resulted in added expense or inconvenience to Father. Specifically, the trial court found that: Father incurred added expense because of Mother's continuation of the December 5, 1996 hearing and the November 19, 1997 hearing; Father incurred added expense as a result of Mother's failure to comply with certain discovery requests; and Mother refused Father's attempts to settle.

■ However, our review of the record reveals that the continuance of the December 5, 1996 hearing was due to Mother's counsel's planned vacation. The continuance of the November 19, 1997 hearing was due to Mother's counsel's sudden illness. Although Father did incur travel expenses from his home in Louisiana to Indiana on both occasions and, in the latter instance, did not learn of the continuance until he and his attorney had traveled to court, there is no evidence of any misconduct on Mother's part that would support an award of attorney fees.

The discovery requests that Mother failed to produce were Son's and Daughter's tax returns and school records. These records belonged to the children and were in their possession, not Mother's. Although Mother may have been able to procure these documents from the children, Father could also have requested these documents directly from the children. Finally, our review of the record does not uncover evidence that Mother's refusal to settle was in bad faith. In addition, we note that Father's income is at

---

**9.** We recognize, as did the trial court, that both Son and Daughter receive substantial college scholarships ·and grants due to disabilities they suffer from, which, thus far, have paid tuition, room, board, and some of the other incidental expenses of Son's and Daughter's college edu-

cation. However, should these types of non-reimbursable aid be reduced or discontinued, the children could be required to incur significant debt.

**10.** Formerly IND.CODE § 31–1–11.5–16 (1993).

least three times Mother's income. From this evidence, we conclude that the trial court abused its discretion when it ordered Mother to pay $6,000.00 in attorney fees.

In conclusion, we reverse the trial court's award of attorney fees to Father and we remand to the trial court for re-apportionment of the children's college expenses, determination of continuing child support for Son, determination of whether and to what extent its modification of child support for both children is retroactive, and redistribution of support monies paid or held during the pendency of this matter consistent with the trial court's determination of child support and retroactivity.

Reversed and remanded.

BAILEY, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting

I respectfully dissent from the majority's conclusions regarding Issues I, III, and IV, and write briefly to explain the bases of my disagreement.

In addressing the question of child support under Issue I, the majority indicates that the termination of the child support obligation with regard to Son was not proper because Son was between the ages of eighteen and twenty-one and had not been emancipated. This conclusion is based upon Ind.Code Ann. § 31–16–6–6 (West 1998). In my view, the majority's narrow focus upon the black-letter law in that provision ignores a central tenet of the child support calculation process; namely, that the trial court enjoys wide discretion in fashioning a child support award because of the need to tailor an award in view of the particularized circumstances of each case. Indeed, the Commentary to Guideline 1 of the Indiana Child Support Guidelines states:

Although application of the Guidelines yields a figure that becomes a rebuttable presumption, there is room for flexibility. Guidelines are not immutable, black letter law. A strict and totally inflexible applica-

tion of the Guidelines to all cases can easily lead to a harsh and unreasonable result. If a judge believes that in a particular case application of the Guideline amount would be unreasonable, unjust, or inappropriate, a finding must be made that sets forth the reason for deviating from the Guideline amount.

In short, a trial court must avoid blind adherence to the rules in determining support, and instead give careful consideration to the variables that require flexible application of the guidelines. *In re the Marriage of Pond,* 676 N.E.2d 401 (Ind.Ct.App.1997), *aff'd in this respect, vacated on other grounds,* 700 N.E.2d 1130 (Ind.1998). If the evidence in a particular case indicates that the amount of an award reached through application of the guidelines would be unjust or unreasonable, the court may deviate from the guideline amount. *Id.* In so doing, the court must enter written findings articulating the particular circumstances that support its conclusion. Such findings need not be especially formal. *Id.*

In the instant case, Son has been away from home attending college since 1996, except during the summer. There is evidence indicating the following. During the summer, Son is employed full-time at a decent wage. While home from college he goes back and forth freely between both parents' homes. Moreover, he spends little time with either of his parents while he is home in the summer. Lori's living expenses are fixed and do not increase as result of Son being home in the summer. Finally, the system in place at the time of the hearing was that Son asked for financial help for clothing and necessities from each parent when it was needed, and it appears that system was successful. Upon these facts, I believe that the trial court's order abating support was not an abuse of discretion.

The majority concludes that the trial court erred in fashioning an order that required the children to exhaust their own resources, including loans, before the parents were required to contribute to the children's college expenses. As the majority notes in footnote 9, Op. at 1110, as a result of disabilities, both children receive financial assistance in the

forms of scholarships and grants. In fact, the grants and scholarships have been so substantial that, as of the date of the final hearing, *i.e.,* April 16, 1998, they have provided for the entire cost of the children's tuition, room, board, and additional incidental expenses thus far.

Daughter began her education at Purdue University in the fall of 1995, and Son enrolled at Purdue in the fall of 1996. This means that at the time of the hearing, Daughter had completed three years of college and Son had completed two. There is no indication in the record that the grants and scholarships theretofore available to the children would not also be available in the future. It is certainly reasonable to assume that, at the very least, such financial assistance had already been arranged and was forthcoming for the 1998–99 school year, because there is no indication otherwise. Therefore, Daughter had completed three years, and likely would complete four, of what in most cases is a four-year college education without incurring any expenses. In Son's case, he had completed two years, and likely could be expected to complete at least a third year, also without incurring any expenses. Under these facts, I believe that the trial court did not abuse its discretion in ordering that the children exhaust all means of financial assistance available to them, including loans, before their parents were required to contribute. Even in the unlikely event that the previously available grants and scholarships would not be available to the children after the 1998–99 school year, Daughter's education was probably complete and Son had only one year left to complete. With only a small portion, if any, of their college careers yet to be completed after the child support order was entered, and in view of the fact that the children had not yet incurred any expense to that point, I cannot agree it was error to require the children to exhaust their own means of financial assistance before the parents were required to contribute.

Finally, I disagree that the trial court erred in ordering Lori to pay Glenn's attorney fees. The majority concludes that the award of attorney fees was improper in part because the delays caused by Mother's attorneys were not attributable to her. Ind.Code Ann. § 31–16–11–1 (West 1998) authorizes the award of attorney fees in child support modification proceedings. That statute does not require a finding of misconduct in order to justify an award of attorney fees. Rather, a trial court enjoys broad discretion in determining whether an award of attorney fees would be appropriate in this context. *Bower v. Bower,* 697 N.E.2d 110 (Ind.Ct.App.1998). The considerable deference accorded a trial court's determination in this respect is reflected in the fact that the trial court need not even state its reasons for awarding attorney fees. *Id.* We reverse an award of attorney fees on appeal only when the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Among the factors that a trial court may consider in making its determination is the conduct of the parties and extent to which their actions have caused the other party to generate unnecessary, additional fees. *See McCallister v. McCallister,* 488 N.E.2d 1147 (Ind.Ct.App.1986).

In the instant case, Glenn incurred considerable expense as a result of last-minute continuances granted at the request of Lori's counsel. Both continuances were requested for personal reasons by Lori's counsel. The majority holds that because the delays were attributable to Lori's counsel, and not Lori herself, they cannot provide the basis for an award of attorney fees. I doubt this distinction is of much solace to Glenn, who incurred considerable expense as a result of the delays. For purposes of attorney fees, I do not share the majority's view that parties cannot be charged with responsibility for their counsel's conduct during the course of litigation. I believe that the trial court should have the discretion to allocate the financial burden for such conduct to the party represented by said counsel. As with other matters in the area of attorney fees, the trial court should be accorded broad discretion in determining when it is appropriate to do so. In any event, Lori was not without some culpability in forcing Glenn to incur unnecessary legal

fees. The record supports the inference that Lori did not at all times negotiate in good faith to settle the matter without need for a contested hearing. In view of the considerable discretion enjoyed by trial courts in making this determination, I would affirm the award of attorney fees.