**Elizabeth Ann CURE, Appellant–Petitioner,**

v.

**Eric Greer CURE, Appellee–Respondent.**

**No. 82A04–0105–CV–193.**

Court of Appeals of Indiana.

May 14, 2002.

David A. Guerrettaz, Dirck H. Stahl, Ziemer, Stayman, Weitzel & Shoulders, LLP, Evansville, Indiana, Attorneys for Appellant.

Laurie Baiden Bumb, Keating, Bumb, Vowels, LaPlante & Kent, P.C., Evansville, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant, Elizabeth Ann Cure (Mother), appeals the trial court's order granting the Motion for Emancipation filed by Respondent–Appellee, Eric Greer Cure (Father) that terminated Father's obligation to pay for the college tuition and living expenses of the couple's oldest daughter.

We reverse.

### ISSUES

The Mother raises two issues for review, which we consolidate and restate as follows: whether the trial court erred in granting Father's Motion for Emancipation.

### FACTS AND PROCEDURAL HISTORY

On August 25, 1997, the parties' marriage was dissolved by a Decree of Dissolution of Marriage that incorporated a "Final Agreement Regarding Property, Indebtedness, Custody, and Support" (the "Agreement"). Among other things, the Agreement provided that Father would pay for the college educational expenses of the parties' three minor children, the oldest of which, Jennifer Greer Cure (Jennifer), was nineteen (19) years old at the time, having been born January 8, 1978. The Agreement provided, in pertinent part, as follows:

Section 3.6 Education. Husband will be responsible for the living expenses of the parties' daughter while she is attending college. Husband shall be responsible for her tuition. Husband shall be responsible for the tuition and living expenses of the parties' two sons as long as they are enrolled in college.

(Appellant's App. pp. 20–21).

At the time of the divorce, Jennifer had just finished her freshman year at Tulane University, Father's alma mater. Initially, Jennifer's college expenses were paid from a fund established by Father's parents for that purpose.[1] According to Father, this fund had a beginning balance of approximately $30,000.00, while Mother testified that the balance was about $42,000.[2]

Jennifer did not return to school the following year, however, opting instead to work for a while. Father did not attempt to emancipate Jennifer during this hiatus. In September 1998, Jennifer resumed her college education as a sophomore, this time at Indiana University in Bloomington, Indiana, where Mother resided. For her third year, Jennifer returned to Tulane University, but because her father didn't want to pay Tulane's high tuition—approximately $11,000 a semester—and because her parents' income disqualified her from any significant need-based loans, Jennifer enrolled in Tulane's University College, where tuition was approximately $8,000.00 a semester. In exchange for the reduced tuition, however, Jennifer was limited to taking twelve (12) credit hours per semester. In addition to paying her tuition that year, Father sent Jennifer $650.00 a month to use for her living expenses.

After her third year, Jennifer resumed attending Tulane University for the remainder of her college career. By then, tuition had increased to approximately

---

1. Each of the sons had a separate college fund, too.

2. According to Father, Jennifer's college fund was depleted sometime during her sophomore year.

$13,000.00 a semester. After credit for Jennifer's student loans, her tuition was reduced to approximately $7,200.00 a semester for her fourth year, which Father paid along with $650.00 a month to cover her living expenses.

On January 30, 2001, during Jennifer's fourth year of college, Father filed his Motion for Emancipation, claiming that Jennifer was twenty-three (23) years of age; that she had completed seven (7) semesters, plus one summer school session, for a total of seventy-six (76) credit hours; and:

> 3. That she has failed to show responsibility for obtaining her degree in that she has failed to apply for financial aid in a timely manner resulting in a loss of $5,335.00 in financial aid, has accumulated charges of $1,295.22 at the bookstore, including $76.70 charge for overdue books, $2,476.16 in late fees, and $1,000.00 in unnecessary medical insurance.
>
> 4. That she fails to make contact with her father when visiting her mother and has refused to reasonably communicate with him regarding her schooling and has spoken to him using foul and disrespectful language when he has attempted to communicate with her.
>
> 5. That she has failed to meet the deadline for registration for spring semester 2001.

(Appellant's App. p. 23).

On April 11, 2001, a hearing was held on Father's Motion for Emancipation. Father testified in support of his motion, emphasizing that he believed his daughter had had a reasonable amount of time—four years—to complete her undergraduate degree, that he had provided her with sufficient funds to do so, and that he had thereby discharged his obligation under the Agreement.

Jennifer testified to the contrary, demonstrating that most of the allegations in Father's Motion for Emancipation were either exaggerated or no longer true. Specifically, Jennifer testified that it was taking her longer than the average eight semesters to obtain her degree because (1) not all of her Indiana University credits transferred to Tulane, and (2) because the year she attended Tulane's University College, she had been limited to twelve (12) credit hours a semester. Jennifer testified further that if she attended summer school in 2001, as was her plan, she would graduate in December 2001.

The trial court issued its "Order of April 11, 2001"[3] which reads, in its entirety, as follows:

> The Court having heard evidence on the father's Petition to Emancipate and being duly advised in the premises now grants said Petition and finds that the father's duty to contribute toward support and college expenses relating to his daughter is hereby terminated and the father shall therefore have no further responsibility regarding the support or education of his daughter Jennifer.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the father's Petition to Emancipate his

---

**3.** Evidently, the trial court announced its decision from the bench at the conclusion of the hearing, but the Order wasn't rendered in written form until April 24, 2001. Mother contends that the Order, as written, fails to include certain factual findings made by the trial court when rendering its oral decision. Mother attempted to have these alleged findings certified for appeal pursuant to Ind. Appellate Rule 3; however, the trial court has never ruled on Mother's request for certification. While Mother attempts to argue the alleged findings on appeal, we do not consider them proper or necessary for our disposition.

daughter Jennifer shall be granted and he shall have no further responsibility regarding her support or college expenses.

(Appellant's App. p. 6).

Mother now appeals.

## DISCUSSION AND DECISION

Mother submits that the applicable standard of review here is the "clearly erroneous" standard now required when reviewing child support orders. *See Matter of Paternity of Humphrey*, 583 N.E.2d 133, 134 (Ind.1991) ("Because trial courts must utilize the same mode of analysis whether dividing property or determining support (i.e., starting with a rebuttable presumption and setting forth reasons for any deviation), we conclude that the same standard of review ought to prevail. Thus, we will disturb a trial court's support order only when it is clearly erroneous.") Father counters that the clearly erroneous standard only applies to the allocation of college expenses, whereas "the decision to order the payment of extraordinary educational expenses" is reviewed only for an abuse of discretion. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind.1992). Under either standard, however, Father's Motion for Emancipation fails.

■ What constitutes emancipation is a question of law, but whether there has been an emancipation is a question of fact. *Young v. Young*, 654 N.E.2d 880, 883 (Ind. Ct.App.1995).[4] Emancipation of a child cannot be presumed; it must be established by competent evidence. *Id.* The burden of producing such competent evidence falls on the party asserting emancipation. *Id.* Here, as the moving party,

Father bore the burden of producing competent evidence demonstrating Jennifer's emancipation as a matter of fact. We find that the record demonstrates clearly that he failed in this respect.

Father styled his action as a Motion for Emancipation. Emancipation terminates a parent's duty to support a child under a decree of dissolution. I.C. § 31–16–6–7(a)(1). Although Father's motion fails to cite a statutory basis, proceedings to emancipate are governed by I.C. § 31–16–6–6, which sets forth the various circumstances under which a child is emancipated. Generally, the statute provides that "a parent's child support obligation terminates when a child is emancipated or reaches age 21, except in certain circumstances." *Lea v. Lea*, 691 N.E.2d 1214, 1215 (Ind.1998). Specifically, I.C. § 31–16–6–6(a) provides:

> The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:
>
> (1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.
>
> (2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.
>
> (3) The child:
>
>> (A) is at least eighteen (18) years of age;
>>
>> (B) has not attended a secondary or postsecondary school for the prior

---

4. Some of the cases cited were decided prior to the statute's recodification in 1997. As our supreme court has observed, however, there is no difference between the present and former version other than the format and numbering. *See Lea v. Lea*, 691 N.E.2d 1214, 1217, n. 1 (Ind.1998).

four (4) months and is not enrolled in a secondary or postsecondary school; and

(C) is or is capable of supporting himself or herself through employment.

As our supreme court explained in *Lea:*

The preface to [I.C. § 31–16–6–6(a)] sets forth the general rule that a child support obligation terminates when the child reaches the age of 21, subject to the conditions set forth in the three following subdivisions. Subdivision (1) provides that the obligation (except for certain educational needs) may terminate before the child's 21st birthday if the child is emancipated. Subdivision (2) provides that the obligation may continue beyond the child's 21st birthday if the child is incapacitated. And Subdivision (3) provides that the obligation may terminate before the child's 21st birthday if the child is at least 18 and not in school and the child is or is capable of supporting himself or herself through employment.

*Lea,* 691 N.E.2d at 1216.

■ To obtain Jennifer's emancipation, then, it was necessary for Father to prove that her present circumstances fit one or more of the qualifying events listed in the statute, e.g. marriage, military service, or that she was no longer in school. To the contrary, however, Father based his Motion for Emancipation on factors unrelated to emancipation, such as obedience, diligence, and the fact that Jennifer was still in school. Nor did Father cure the motion's defects through his testimony at the hearing. As a result, Father failed to present any evidence deemed competent by I.C. § 31–16–6–6. Thus, Father failed to demonstrate that Jennifer was emancipated.

■ In addition, even if Father had succeeded at demonstrating that Jennifer was emancipated for purposes of child support, that fact alone would not alter his present obligation for college expenses as set forth in the parties' Agreement, because I.C. § 31–16–6–6(a) permits the continuation of educational expenses beyond emancipation. *Marshall v. Marshall,* 601 N.E.2d 9, 12 (Ind.Ct.App.1992) ("[T]he trial court [has] authority to extend support for educational needs beyond a child's twenty-first birthday even though the obligation for child support ends.").

■ Moreover, instead of addressing the statutory factors for emancipation, Father's motion, and his testimony at the April 11, 2001 hearing on the motion, focused on what he perceived to be deficiencies in Jennifer's behavior with respect to her obligations both as a student and as a daughter. On appeal, Father argues that the rift in his relationship with Jennifer provided an adequate reason for terminating his support obligation under *McKay v. McKay,* 644 N.E.2d 164, 168 (Ind.Ct.App. 1994) ("Joel's repudiation of the father-son relationship has relieved Father of any further responsibility to contribute toward Joel's college education."). We disagree for two reasons. First, Jennifer's testimony at the April 11, 2001 hearing demonstrated that she had pursued her financial aid options with sufficient diligence. Secondly, Jennifer testified that she desired to have a relationship with her father and that, in her opinion, their relationship could be reconciled. Thus, the present facts do not warrant any finding or inference that Jennifer has repudiated her relationship with Father to the extent necessary to justify the extreme remedy provided in *McKay.* Moreover, in *McKay,* the father's petition was for a modification of the order requiring his payment of educational expenses; he was

not proceeding on a petition to emancipate. Thus, we do not find *McKay* applicable.

Father's testimony at the April 11th hearing on his motion made clear that his actual goal was to obtain an order terminating his obligation to pay any more of Jennifer's educational expenses. To obtain such an order, however, Father should have filed a motion to modify, not emancipate. As we stated in *Hay v. Hay*, 730 N.E.2d 787, 791–92, (Ind.Ct.App.2000): "[P]rovisions for the payment of college expenses are also modifiable, as college expenses are in the nature of child support." Although Father captioned his motion as one to emancipate, we are not bound to so limit our review if the motion's intent is clearly otherwise. *See McQueen v. State* 396 N.E.2d 903, 904, 272 Ind. 229 (Ind.1979) ("Pleadings are to be examined and treated as to their content rather than their captions.") Thus, we now consider whether the Father was nonetheless entitled to the relief he sought even though he proceeded incorrectly.

■ To obtain a modification of his support obligation, regardless of how he styled his motion, it was incumbent on Father to plead and prove (1) "changed circumstances so substantial and continuing as to make the terms unreasonable," or (2) that his support obligation differed by more than twenty percent (20%) from the amount that he would have been ordered to pay under the child support guidelines. I.C. § 31–16–8–1; *Hay,* 730 N.E.2d at 792. Father's Motion for Emancipation made no such allegations; it focused, instead, on Jennifer's alleged misdeeds as perceived by her father. In addition, the Motion for Emancipation made no mention of modifying the educational expenses. For these reasons, Father's Motion to Emancipate cannot be equated to a motion to modify child support/educational expenses.

■ Moreover, while Father's testimony alluded to Jennifer's fifth year of undergraduate studies as an unexpected change of circumstances, the evidence does not warrant a finding that such change was "so substantial and continuing as to make the terms unreasonable." I.C. 13–16–8–1(1). To the contrary, the evidence presented at the hearing revealed that while the Agreement obligated Father to pay for all of Jennifer's educational expenses, it was Father's parents who actually funded her first, and part of her second, year of college. Also, one reason it has taken Jennifer longer than four years to obtain her degree is that she saved her father some money on tuition during her third year by attending a program that limited her credit hours to twelve per semester. Thus, neither the motion nor the evidence supports the trial court's decision granting Father's Motion for Emancipation and terminating his obligations under the Agreement.

*CONCLUSION*

For all of the foregoing reasons, we hold that the trial court erred in granting Father's Motion to Emancipate.

Reversed.

MATTINGLY–MAY, J., and VAIDIK, J., concur.