## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 01 2018, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregg S. Theobald
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles B. Eldredge, | May 1, 2018 |
| *Appellant-Respondent,* | Court of Appeals Case No. 12A02-1710-DR-2352 |
| v. | Appeal from the Clinton Circuit Court |
| Susan M. Ruch, | The Honorable Bradley K. Mohler, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 12C01-0906-DR-312 |

**Bradford, Judge.**

# Case Summary

Appellant-Respondent Charles Eldredge ("Father") and Appellee-Petitioner Susan Ruch ("Mother") (collectively, "Parents") were married in 1994 and had one child, M.E., in 1997. Parents' 2000 divorce in North Carolina included a property settlement agreement and child support provisions ("the Support Order") but did not obligate either parent to cover M.E.'s college expenses. In 2009 and 2012, the trial court modified Father's child support obligation.

In December of 2016, Mother petitioned the trial court for college expenses, which the trial court granted in July of 2017. Father contends that the trial court erred in ordering that he contribute to M.E.'s college expenses when the Support Order did not include them and North Carolina law did not support their imposition. Father also contends that the trial court abused its discretion in not including a benefit payable from the Department of Veterans Affairs ("the VA") to M.E. in its calculation of her contribution to her educational expenses and declining to impose a requirement that M.E. maintain full-time student status. Because we disagree with all of Father's contentions, we affirm.

# Facts and Procedural History

Father and Mother married in 1994 and had their daughter M.E. in 1997. Father and Mother entered into a settlement agreement in August of 1999 in North Carolina, which settlement agreement was accepted and incorporated into a divorce decree that was issued in July of 2000 and included the Support

Order. The Support Order provided that Father would pay Mother $650.00 in monthly child support for M.E.

[4] In June of 2009, a petition was filed in Clinton County by the child-support prosecutor to register and modify the Support Order. On November 9, 2009, Father, his attorney, Mother, and the child-support prosecutor agreed to an increase in the amount of child support Father was obligated to pay. In June of 2012, Father petitioned to reduce his child support obligation. On September 17, 2012, Parents agreed to reduce the amount of child support Father was obligated to pay.

[5] M.E. began attending the University of Findlay in Ohio to study animal science with a pre-veterinary concentration in the fall of 2016, having also been accepted to Purdue University. The total cost of attending Findlay is approximately $45,500 per year. Mother testified that M.E. was to receive $25,700 in scholarships for her first year at Findlay and $17,000 for her second. Moreover, because of Father's military service M.E. is eligible to receive forty-five months of non-repayable monetary benefits from the VA, paid directly to M.E. each month during her full-time attendance at a college or university. Specifically, M.E. receives $1024.00 per month when she attends a college or university full-time, and M.E. receives a *pro rata* monthly payment from the VA during the months she attends college or university for a portion of a month, such as December or May. All told, the VA directly pays M.E. approximately $8200.00 each year while she is a full-time student.

[6] On December 14, 2016, Mother petitioned for a college expense order for M.E. On April 4, 2017, Father moved to dismiss Mother's petition for college expenses, arguing that the Indiana Uniform Interstate Support Act ("the Act") does not provide the authority for an Indiana court to establish a college expense obligation when North Carolina law does not allow for such an obligation to be created without an express agreement between the parties.

[7] On July 3, 2017, the trial court granted Mother's petition for a college expense order for M.E, beginning with the spring of 2017. The trial court ordered M.E., Father, and Mother to contribute to M.E.'s college expenses, with M.E.'s obligation satisfied by her scholarships and with Father and Mother contributing 54% and 46% of the remaining expenses, respectively. The trial court ordered that Parents' obligations be limited to the costs of a public, in-state university, concluding that Purdue's veterinary medicine program (at a yearly cost of approximately $23,000) is well-respected and that M.E.'s desire to attend a smaller school was not sufficient to justify the additional expense of a private education. The trial court declined to count the $1024.00 in monthly VA payments against M.E.'s portion of college expenses that she is responsible for and declined to require M.E. to be a full-time student as a condition precedent to Parents' obligation to contribute to M.E.'s college expenses.

# Discussion and Decision

# I. Whether the Trial Court Erred in Ordering Father to Contribute to M.E.'s College Expenses

[8] Father argues that the trial court erred in ordering him to cover some of M.E.'s college expenses when there was no such obligation in the Support Order, nor a separate agreement to do so. As an initial matter, we note that Mother has not filed an Appellee's Brief, despite making an appearance. When the appellee does not file a brief, we need not undertake the burden of developing an argument for the appellee. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse the trial court's judgment if the appellant presents a case of prima facie error. *Id.* "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (quotation omitted). Where an appellant does not meet this burden, we will affirm. *Id.*

[9] Father contends that the trial court erred in ordering postsecondary educational support because the Act contains no specific authority for such an order where neither North Carolina law nor the Support Order provide for it. We assume, without deciding, that Father's assertion that he is not obligated by North Carolina law or the Support Order to pay for any of M.E.'s college expenses is accurate. The question, then, is whether North Carolina law still applies. We conclude that it does not.

[10] The Act provides that "[o]n the issuance of an order by an Indiana tribunal modifying a child support order issued in another state, the Indiana tribunal becomes the tribunal having continuing, exclusive jurisdiction." Ind. Code § 31-18.5-6-11(e). As mentioned, the trial court modified the Support Order in

2009—with Father's agreement—thereby conferring it with continuing and exclusive jurisdiction. Moreover,

> Except as otherwise provided in this article, a responding Indiana tribunal shall:
>> (1) apply the procedural and substantive law generally applicable to similar proceedings originating in Indiana and may exercise all powers and provide all remedies available in those proceedings; and
>> (2) determine the duty of support and the amount payable in accordance with the law and support guidelines of Indiana.

Ind. Code § 31-18.5-3-3. Father's argument that the trial court lacked the legal authority to add an educational support obligation is without merit. *See Batterman v. Bender*, 809 N.E.2d 410, 413 (Ind. Ct. App. 2004) (concluding, in case involving "the modification of a child support order of another state[, that what is now Indiana Code section 31-18.5-3-3] calls for Indiana substantive law unless otherwise provided").

## II. Whether the Trial Court Abused its Discretion in its Educational Support Order

As for our standard of review of post-secondary educational orders issued pursuant to the Guidelines,

> Decisions regarding child support generally fall within the sound discretion of the trial court. *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006). Reversal of a trial court's child support order is merited only where the determination is clearly against the logic and effect of the facts and circumstances before the

court. *Id*. On appeal, we will consider only the evidence and reasonable inferences favorable to the judgment. *Id*. We also bear in mind that although a trial court has broad discretion to tailor a child support award in light of the circumstances before it, "this discretion must be exercised within the methodological framework established by the guidelines." *McGinley-Ellis v. Ellis*, 638 N.E.2d 1249, 1251–52 (Ind.1994). This principle applies with equal force to orders regarding post-secondary education expenses. *See Carr v. Carr*, 600 N.E.2d 943, 946 n.3 (Ind. 1992).

*Quinn v. Threlkel*, 858 N.E.2d 665, 670 (Ind. Ct. App. 2006).

[12] Father contends that, even if he can be ordered to provide educational support, the trial court abused its discretion in its order. Indiana Code section 31-16-6-2 provides, in part, as follows:

> (a) The child support order or an educational support order may also include, where appropriate:
>
> > (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:
> >
> > > (A) the child's aptitude and ability;
> > >
> > > (B) the child's reasonable ability to contribute to educational expenses through:
> > >
> > > > (i) work;
> > > >
> > > > (ii) obtaining loans; and
> > > >
> > > > (iii) obtaining other sources of financial aid reasonably available to the child and each parent; and
> > >
> > > (C) the ability of each parent to meet these expenses[.]

[13]     Indiana Child Support Guideline 8 provides, in part, that "[e]xtraordinary educational expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child." Comment b to Guideline 8 explains that

> [i]t is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

With that in mind, we address Father's specific challenges to the educational support order.

## A. M.E.'s VA Benefits

[14]     Father contends that the trial court abused its discretion in crediting M.E.'s VA benefit of $1024.00 per month to M.E.'s contribution to her post-secondary education as opposed to Parents'. Under the circumstances of the case, we cannot conclude that the trial court abused its discretion in this regard. Although Findlay costs approximately $45,500 per year to attend, M.E. earned scholarships of approximately $27,000 for her first year, with $17,000 in recurring awards carried on to her second year at least. In other words, M.E.—through scholarships she earned—is more than pulling her weight already, covering more than half of her first-year expenses and more than one-third of

her second-year expenses. Although Father argues that allowing M.E. to retain her VA payments unjustly enriches her, forcing M.E. to contribute an *additional* $8200 per year to her education strikes us as much less equitable and something of a windfall for Parents. We have little trouble concluding that the trial court did not abuse its discretion in this regard.

## B. Full-Time Student Status Requirement

[15] Father contends that the trial court abused its discretion in failing to require M.E. to maintain full-time student status as a condition precedent to educational support. Although Father cites to a case from this court where such a requirement was upheld in that case as a reasonable measure of aptitude for post-secondary education, *Gilbert v. Gilbert*, 777 N.E.2d 785, 793 (Ind. Ct. App. 2002), *Gilbert* does not at all stand for the proposition that such a requirement is even recommended, much less required, in all cases. *Gilbert* is also easily distinguishable. The facts of this case differ significantly from those in *Gilbert*, where the student had been struggling in college, with a grade point average of 2.11 through two years with a full-time credit load in only one of four semesters. *Id*. at 793. In contrast, nothing about M.E.'s record leads to any concern that she lacks the aptitude for college, with a high school GPA of 3.7145 and a class rank of fifteenth out of 280 students. It is true that review of a child's aptitude for college should be considered when ordering post-secondary educational support. *See Carr v. Carr*, 600 N.E.2d 943, 945 (Ind. 1992) ("[C]ollege expense orders [hinge] on a review of the aptitude and ability of the child and the means of the parties."). Father, however, points to nothing

about M.E. that would support the imposition of a full-time-student-status requirement at this time. The trial court did not abuse its discretion in declining to do so.

# Conclusion

We conclude that the trial court had the authority pursuant to the Act to issue a post-secondary educational support order for M.E. We also conclude that the trial court did not abuse its discretion in declining to (1) require M.E. to apply the VA payments toward the Parents' share of educational expenses and (2) require that M.E. remain a full-time student as a condition precedent to educational support.

We affirm the judgment of the trial court.

Baker, J., and Kirsch, J., concur.