Sandra **WARNER**, Appellant–
Petitioner,

v.

Joe **WARNER**, Appellee–Respondent.

No. 34A05–9909–CV–409.

Court of Appeals of Indiana.

March 30, 2000.

Dan May, Kokomo, Indiana, Attorney for Appellant.

Michael O. Bolinger, Bolinger, Bolinger & Kuntz, Kokomo, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellant-petitioner Sandra Warner Aucoin (Sandra) appeals the trial court's order modifying child support to be paid by appellee-respondent Joe Warner (Joe) on behalf of their daughter A.W. Specifically, Sandra argues that the trial court's order was an abuse of discretion and contrary to law because (1) it did not order each parent to pay an amount of college expenses roughly proportional to income and failed to include certain college expenses in ordering father's payment; (2) the trial court did not use the required worksheet for post-secondary expenses; (3) the trial court failed to join A.W. as a party; (4) the trial court made child support payments contingent upon Joe enjoying visitation rights with A.W.; and (5) the trial court failed to order Joe to reimburse Sandra for orthodontia expenses despite the child support order previously in effect requiring such payment.

### FACTS

Sandra and Joe were divorced on August 18, 1988. A.W. was born during their marriage, on June 28, 1981. Joe was originally ordered to pay child support to Sandra in the amount of seventy-seven dollars per week. The support order was modified to $134 weekly in 1993 and included an order for payment of expected orthodontia expenses.

Sandra brought the instant petition for educational expenses on June 14, 1999. After a hearing which took place on August 2, 1999, the trial court issued its order on August 9, 1999. According to the support worksheet used by the trial court in apportioning college expenses, Joe has $1286 adjusted gross weekly income and Sandra has $840 adjusted gross weekly income. A.W. was expected to enroll at Indiana University–Bloomington (I.U.) in the fall of 1999, and both parties had agreed that, because of A.W.'s excellent high school grades, this was an appropriate facility for her college education. Thus, the trial court based its college expense order on costs at I.U. The court listed as college expenses to be paid by the two parents: tuition, room, board, and books.

The court required each parent to pay 45% of these expenses and A.W. to pay the remaining 10%. It excluded from this apportionment between parents and child the costs of transportation, fees, and "expenses," which I.U. publicly lists, along with tuition, room and board as costs to be expected at college. *Indiana University Bloomington Costs,* February 19, 1999, *available at* http://www.icpac.indiana.edu/college profiles/151351–costs.html. I.U. projects that transportation, fees and the undefined category of "expenses" amount to approximately $2,647 per year. *Id.*

The court further ordered that during the academic year, the support order would cease, but it required Joe to pay $166 per week in child support during Christmas and summer vacations only if A.W. "makes herself available, at hours available to Respondent [Joe], for visitation with Respondent." Record at 25. Furthermore, the court made the parents' payment of their share of college costs contingent upon A.W. maintaining a 2.5 grade point average, the equivalent of a B−/C+ average on I.U.'s 4.0 scale.

Finally, the trial court declined to order Joe to pay for any orthodontia expenses already incurred upon the grounds that Sandra did not consult Joe before incurring these expenses. The support modification order dated May 14, 1993, and in effect at the time the orthodontia expenses were incurred, provided as follows:

5. Recognizing that 6% of the support amount is for health care expenses, the Petitioner [Sandra] is ordered to pay the first $714 of health care expenses for [A.W.] each year. The parties are thereafter ordered to pay for non-covered optical, medical, dental, and orthodontia expenses in the following ratio: 40% Petitioner and 60% Respondent.

R. at 2–3. From the trial court order described above, Sandra now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ In reviewing orders for apportionment of college expenses, we do not weigh the evidence or determine credibility, but consider only evidence and reasonable inferences favorable to the judgment. *Skalon v. Skalon–Gayer*, 695 N.E.2d 953, 956 (Ind.Ct.App.1997). We will affirm the trial court unless its order is clearly erroneous. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind.1992); *Skalon*, 695 N.E.2d at 956. The decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances which were before the trial court. *Carr*, 600 N.E.2d at 945.

### II. Apportionment of College Expenses

Sandra first contends that the trial court is required to allot payment of college expenses proportionately according to each parent's income, not equally. Specifically, she argues that a "rough proportionality" is required. Appellant's brief at 10. She further contends that specific findings are required to justify any deviation from the Indiana Child Support Guidelines (the guidelines). Finally, she points out that the trial court included in its order the payment of tuition, room, board and books only when it apportioned 45% of costs to each parent and 10% of costs to A.W. She argues that this order results in the additional costs of transportation, fees and ex-

penses, amounting to approximately $2,647 per year,[1] falling upon A.W. or herself.

■ We note initially that the trial court has authority and discretion to award post-secondary educational expenses and to determine the amount of such an award. Child Supp. G. 6 Commentary. The court should consider post-secondary education to be a group effort and should weigh the ability of each parent to contribute to payment of the expense as well as the ability of the student to pay some part. *Id.* The trial court must determine what constitutes educational expenses, and the guidelines state that these will generally include tuition, books, lab fees, supplies, student activity fees, and the like. *Id.* Room and board are also included when the student lives away from the custodial parent during the school year. *Id.*

■ Furthermore, we note that a "rough proportionality" has been required in the apportionment of college expenses between parents and children. *Carr*, 600 N.E.2d at 946; *Stover v. Stover*, 645 N.E.2d 1109, 1111 (Ind.Ct.App.1995). A requirement of rough proportionality is not a requirement of precise parity. *Carr*, 600 N.E.2d at 946. However, deviations from rough proportionality require a finding that such an apportionment would be unjust. Ind. Child Support Rule 3. *See Leisure v. Leisure*, 589 N.E.2d 1163, 1175 (Ind.Ct.App.1992). Absent such specific findings, we have found that an apportionment of college expenses which was not roughly proportionate to parental resources was clearly erroneous. *See Glick v. Lawmaster*, 648 N.E.2d 370 (Ind.Ct. App.1995) (eight per cent deviation from guidelines was not insubstantial, but trial court was upheld because it made a specific finding that Father would soon lose his job); *Fiste v. Fiste*, 627 N.E.2d 1368, 1371 (Ind.Ct.App.1994)(where mother earned 22% of gross total income of parents, trial court erred in requiring her, without mak-

---

1. However, a portion of the category named "expenses" may be for textbook costs, in which case the total of unapportioned expenses would be lower.

ing specific findings, to pay 33% of child's college expenses).

■ In the instant case, Sandra's income was 40% of the two parents' total income, while Joe's was 60%. R. at 27. The trial court ordered, without making specific findings, that each parent should pay an equal portion of A.W.'s college expenses. R. at 26. We note that Joe is still required to pay child support for those periods when A.W. returns to her mother's home for winter and summer vacations. However, we recognize that the court has ordered from each parent payment for college expenses which deviates from the expected result of "rough proportionality" yet has not made any findings that a proportionate result would be unjust. *See Leisure*, 589 N.E.2d at 1175. We have remanded a similar case with instructions to the trial court to make specific findings supporting its order. *Skalon*, 695 N.E.2d at 955. In this case, we remand with instructions to the trial court either to make specific findings justifying its departure from a roughly proportional allotment of expenses or to alter the order.

■ With respect to Sandra's further contention that the trial court erred in including only tuition, books, room and board in expenses, however, we note that the trial court has discretion to determine what is included in college expenses and also whether it is proper for a child to pay some portion of these expenses. We recognize that the other expenses which Sandra cites, and which will clearly have to be paid, will impose an additional burden on A.W. beyond the ten per cent of the cost of tuition, room, board, and books which the court has explicitly imposed. However, nowhere in the guidelines is it suggested that the trial court cannot in its discretion determine which college expenses will be shared by parents and children. Indeed, the guidelines note, "[s]ome courts apportion the allowed educational expenses between the parties by requiring the student to bear one-third of the cost and splitting the remaining two-thirds between the par-

ents based on their ratios of income." Ind. Child Supp. G. 3 Commentary. This apportionment may not be preferred according to the guidelines, but as we have pointed out, it is obviously deemed acceptable. *Skalon*, 695 N.E.2d at 956. Even if the additional costs fall to A.W., she will not be paying one-third of the costs of her education. Thus, we cannot say here that the trial court's order for A.W. to pay 10% of her expenses or its exclusion of certain college expenses when it apportioned payment are clearly erroneous.

### III. Use of Worksheet for Post-Secondary Expenses

■ Sandra next contends that the trial court erred in failing to employ the Educational Support Worksheet which appears in the guidelines, as well as the Child Support Worksheet, to determine the order for post-secondary educational support. Specifically, she maintains that the filing of the child support worksheet together with the educational expense portion may not be waived by the parties and is mandatory for a proper determination of the correct amount of child support.

We note that the guidelines state that the Post–Secondary Educational Support Worksheet, along with the Child Support Obligation Worksheet "must be filed with the court" both in situations where one child is attending college and other child(ren) live at home, or where there is only one child of the marriage and that child is attending college. Child Supp. G. 6 Commentary. Furthermore, several recent cases have remanded to the trial court cases in which we found a child support order unreviewable because of the trial court's failure to provide a basis for its order or its failure to adopt one or the other parent's child support worksheets. *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1303 (Ind.Ct.App.1998); *Scott v. Scott*, 668 N.E.2d 691, 704 (Ind.Ct.App.1996); *Cobb v. Cobb*, 588 N.E.2d 571, 574 (Ind.Ct.App. 1992).

Because we remand in any case for a reconsideration of the apportionment of expenses or for specific findings justifying the trial court's apportionment, we also remand with instructions to require of the parties a Post–Secondary Educational Support Worksheet to aid in the determination of support payment.

### IV. Failure to Join A.W. as a Party

Sandra next contends that the trial court's ruling is an abuse of discretion, contrary to law, or void because it failed to join A.W. as an indispensable party. Specifically, she argues that the trial court's order attempts to bind A.W. to a college expense order which she had no chance to litigate, and that it is thus a violation of her due process and equal protection rights under the Indiana Constitution, Article I, § 23. In addition, Sandra points out that the trial court order attempts to bind A.W. to a visitation order and makes support payments from her father contingent upon visitation.

We note initially that a court may not make the receipt of support payments by a noncustodial parent contingent upon that parent receiving visitation. *Rendon v. Rendon,* 692 N.E.2d 889, 897 (Ind.Ct. App.1998). We note further that Joe concedes this much. There is no evidence in the record to suggest that Sandra has in any way interfered with visitation. However, even if she had, such action does not entitle Joe as the noncustodial parent to withhold support payments. *See Moody v. Moody,* 565 N.E.2d 388, 391 (Ind.Ct. App.1991) (arrearages in child support not excused by custodial parent's fifteen-year interference with noncustodial parent's visitation). Therefore, we reverse that portion of the trial court's order which makes child support payments contingent upon Joe's receiving visitation.

However, with regard to Sandra's argument that the trial court's ruling is void because it failed to join an allegedly indispensable party, we note that there is no requirement in statutes or in the guidelines that a child be joined as a party in a support case. Furthermore, to accept Sandra's constitutional arguments, one would have to suppose that a child had a constitutional right to full parental payment of college expenses. Instead, there is no requirement that a divorced parent pay any post-secondary educational expenses; the trial court makes such a ruling in its discretion. Ind. Child Supp. G. 6. Thus, the trial court did not err in making its order without A.W. being joined as a party.

### V. Requirement of Minimum Grade Point Average

Sandra next argues that the trial court erred in requiring A.W. to maintain a 2.5 grade point average, the equivalent of a B−/C+ average. Specifically, she maintains that at I.U.-Bloomington a 2.0 is required to graduate and that making A.W.'s support contingent on a higher G.P.A. than that necessary to remain a student in good standing constitutes an unreasonable additional burden upon A.W.

We note that Ind. Child Supp. G. 6 clearly indicates that the trial court "should require that a student maintain a certain minimum level of academic performance to remain eligible for parental assistance." In this case, Sandra asserts that A.W. was an honor student in high school. We do not believe that a trial court order for an high school honor student to maintain a B−/C+ average in college is clearly erroneous. Rather it is an acceptable "certain minimum" which the court should require, according to the guidelines. Ind. Child Supp. G. 6. Therefore, we find that the trial court's order that A.W. maintain a 2.5 GPA is not clearly erroneous.

### VI. Orthodontia Expenses

Finally, Sandra asserts that the trial court erroneously declined to order Joe to pay his portion of orthodontia expenses because she had not "consulted" him before incurring those expenses. R.

at 25. Specifically, she points out that the support modification order in effect at the time did not require her to consult Joe before incurring orthodontia expenses. Furthermore, she argues that Joe did not, at the trial court or on appeal, offer any evidence of the "local custom" which, he alleges, requires parents to consult on orthodontia expenses.

 We note initially that Ind.Code § 31–14–13–4 authorizes the custodial parent to determine the upbringing of the child, including provision of medical care absent a court order limiting that authority. Furthermore, I.C. § 31–14–13–4 makes the imposition of such a limitation contingent upon the trial court finding that the limitation is in "the best interests of the child." Finally, a trial court may not modify an existing support order to a date earlier than the filing of a petition to modify. *Thacker v. Thacker*, 710 N.E.2d 942, 945 (Ind.Ct.App.1999).

In this case, the support modification order in effect when the disputed expenses were incurred stated only that Sandra must pay the first $714 of health care expenses for A.W. and that thereafter Joe would pay 60% and Sandra 40% of "noncovered optical, medical, dental, and orthodontia expenses." Supp. R. at 2–3.

We find that the trial court order was clearly erroneous because no such limitation was placed upon Sandra in the child support order then in effect. Therefore, the trial court's present refusal to require payment of orthodontia expenses constitutes a retroactive modification of the existing support order. *See Thacker*, 710 N.E.2d at 945. We remand to the trial court with instructions to order the payment of Joe's portion of the orthodontia expenses.

### CONCLUSION

In summary, we affirm the trial court's order that A.W. maintain a 2.5 GPA in order to receive parental financial support while in college. We also find that the trial court did not err in issuing an order when A.W. had not been joined as a party. We remand to the trial court its order apportioning college expenses between parents and child with instructions to either modify its order or to provide specific findings justifying its departure from a roughly proportional allotment of payments. Furthermore, we instruct the trial court to require the appropriate worksheet for determining post-secondary educational support. Finally, we reverse the trial court's order that Joe's payments of child support are contingent upon his receiving visitation and the trial court's order declining to require Joe to pay his portion of orthodontia expenses as mandated in the relevant child modification order.

Judgment affirmed in part and reversed and remanded in part.

SULLIVAN, J., and KIRSCH, J., concur.