**Daniel F. MILLION, Appellant–Petitioner,**

v.

**Janice L. (Million) SWAGER, Appellee–Respondent.**

No. 89A01–0310–CV–377.

Court of Appeals of Indiana.

April 28, 2004.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, David A. Federico, Hagerstown, IN, Attorneys for Appellant.

E. Thomas Kemp, Richmond, IN, Attorney for Appellee.

### OPINION

MAY, Judge.

Daniel F. Million ("Father") appeals the trial court's order regarding payment of college expenses for C.C.M., the oldest

child of Father's former marriage to Janice L. Swager ("Mother"). Father raises one issue on appeal, which is whether the trial court's order that Father pay toward C.C.M.'s education at Cornell University was clearly erroneous. We affirm.

## FACTS AND PROCEDURAL HISTORY

C.C.M. was born August 30, 1982, during the marriage of Mother and Father.[1] On January 6, 1995, the trial court dissolved the marriage. Pursuant to that decree, the parties share joint legal custody of C.C.M. and Mother has physical custody. C.C.M. went to public school for his first two years of high school, then finished his high school education at the Indiana Academy affiliated with Ball State University in Muncie, Indiana.[2] During his two years at the Indiana Academy, C.C.M. received all A's and was on the honor roll every semester. As a senior in 2001, he was recognized as a National Merit Scholar.

During his senior year, C.C.M. began searching for a college that would offer both the best academic program in his chosen fields of study, physics and mathematics, and the best financial aid package. C.C.M. attempted to involve Father in his college search, but Father failed to return C.C.M.'s phone calls. In addition, when C.C.M. needed financial information from Father to complete financial aid applications for the six schools to which he applied, Father refused to provide that information. On January 25, 2001, Mother filed a motion to modify the child support decree to address college expenses.

C.C.M. was accepted at Cornell University[3] and determined it was offering the most financial aid of the schools to which he applied. In the summer of 2001, after C.C.M. accepted Cornell University's offer to attend in the fall of 2001, Father met with C.C.M. and Mother and offered to let C.C.M. use his van to move to college.

The cost of C.C.M.'s freshman year at Cornell was $36,978.00, which included tuition, room and board, books, and supplies. C.C.M.'s financial aid covered $22,453.00, C.C.M. earned $1,800.00 through a work/study program, C.C.M. took out student loans for $6,625.00, and Mother borrowed the remaining $6,100.00.

On August 1, 2002, Mother filed another motion to modify the dissolution decree to include college expenses. The total cost of C.C.M.'s sophomore year at Cornell was $38,811.00. To help cover those costs, Mother borrowed another $11,000.00.

In May of 2003, the trial court held a hearing on Mother's motion to modify. Each party filed proposed findings and conclusions. The trial court's judgment included, in relevant part, the following:

### FINDINGS OF FACT

1. On January 6, 1995, this Court issued its decree of dissolution terminating the marriage of the parties and making provisions for the care

---

1. Two other children were born during the marriage. However, the appealed order involves payments for C.C.M. only.

2. The Indiana Academy is a publicly funded high school for gifted and talented students who wish to obtain an academic honors diploma and take Advanced Placement courses for college. http://www.ihets.org/progserv/education/k20/indiana_academy.html (last visited March 19, 2004).

3. Cornell University is a private school in Ithaca, New York, and is affiliated with the Ivy League. http://www.cornell.edu/CU-FACTS/thumbnail.html (last visited March 19, 2004).

and custody of the parties' three minor children....

\* \* \* \* \* \*

3. The modification order of July 5, 2000, provided that [Father] pay directly to [C.C.M.] the sum of One Hundred Twenty–Five Dollars ($125.00) per month to assist [C.C.M.] in paying his expenses while attending high school.

4. [Mother] filed the Motion to Modify Dissolution of Marriage Decree Relating to College Expenses, Child Support and Other Related Matters on January 25, 2001 and subsequently filed an amended motion on August 1, 2002.

5. [C.C.M.] graduated from high school in June of 2001, and enrolled at Cornell University in Ithaca, New York in the fall of 2001, as a freshman. He successfully completed his freshman and sophomore years at Cornell, and anticipates returning in the fall of 2003 for his junior year at college.

\* \* \* \* \* \*

7. [C.C.M.] is an exceptionally bright student, having earned high marks in high school, performed well on college entrance exams, and achieved academic recognition for his performance while enrolled at Cornell.

8. [C.C.M.]'s freshman year at Cornell cost a total of $36,978.00 in tuition, room and board, books and supplies, travel and fees, of which [Mother] paid $6,100.00.

9. [C.C.M.]'s sophomore year at Cornell cost a total of $38,811.00 in tuition, room and board, books and supplies, travel and fees, of which [Mother] paid $10,800.00.

10. It is anticipated that the costs and eligibility for aid for [C.C.M.]'s junior and senior year at Cornell will be in line with his freshman and sophomore years.

11. After the last modification [Father], a self-employed building contractor, suffered business and financial reverses resulting in personal and business bankruptcy.

12. [Father] is employed at Newcomber Lumber in Greenfield, Indiana with a base salary of $25,000.00 per year, and earns Five Percent (5%) commission on sales.

13. [Mother] is employed at Wal–Mart in New Castle, Indiana earning $9.49 per hour and working approximately 45 hours per week.

14. [Father]'s normal and average weekly wages at the time of the hearing are $481.00.

15. [Mother]'s normal and average weekly wages at the time of the hearing are $451.00.

16. The parties' combined income is $932.00, with [Father] earning approximately 52% of said combined weekly gross income and [Mother] earning approximately 48% of such income.

17. It is anticipated that [C.C.M.] will be out of school and living either with [Mother], or in such situation that he will require support from his parents for approximately 17 weeks out of each year.

18. There has been a substantial and significant change in the circumstances of the parties and the children such that a modification of the previous entry of this Court is justified. Specifically, the parties' old-

est child, [C.C.M.] has enrolled at college.

\* \* \* \* \* \*

### CONCLUSIONS

■ This case presents a unique confluence of circumstances that affords no entirely satisfactory resolution. [C.C.M.] has studied diligently in pursuit of his dream of obtaining his education and degree at a top flight university. He has proven to be an exceptional student and has succeeded in obtaining significant financial aid enabling him to pursue his degree at Cornell University with the help of his mother, his own earnings and loans. An education at Cornell is expensive and the expectations of [Mother] for contributions from [Father] for these expenses places a financial challenge that he contends he is unable to bear due to financial reverses that resulted in a bankruptcy and a diminution of his earnings. [Father] asserts that, had [C.C.M.] elected to attend a state school, his academic credentials would have afforded him a "free ride" and therefore, [Father] should be exonerated from contributing to educational expenses.

■ The Court's determination of [Father]'s obligation is based on 1/3 of those educational expenses not covered by grants and scholarships being paid by [C.C.M.], and the remaining 2/3 being paid by [Father] and [Mother] according to their incomes, 52% and 48% respectively. Therefore, 35% of those educational expenses not covered by scholarships and grants shall be borne by [Father] and 32% by [Mother], except that neither parties' [sic] obligation shall exceed $4,000.00 per year.

■ The parties' obligation should be capped at $4,000.00 per year as that constitutes a reasonable limitation based on their incomes. The Court recognizes that this limitation will create a shortfall that [C.C.M.] will have to make up through loans or by one or both parties voluntarily contributing beyond the limit imposed by the Court. The Court notes that the cap imposed approximates one third the expenses that would be incurred at a state school. The Court is not persuaded that a financial benefit of [C.C.M.]'s record of academic excellence should inure to [Father] based on his reasoning that with such achievements [C.C.M.] could have obtained a "free ride" at Purdue. In choosing a school, [C.C.M.] is entitled to the benefit of his dedication to academic excellence and his parents should expect to make a reasonable contribution.

■ [Father]'s duty of contribution for [C.C.M.]'s freshman year should be $3,172.00 (52% of $6,100.00 paid by [Mother]). [Father]'s duty of contribution for [C.C.M.]'s sophomore year should be limited by the cap imposed herein and he shall remunerate [Mother] in the amount of $4,000.00. Judgment should be entered for [Mother] and against [Father] in the amount of $7,172.00.

■ [Father] shall be credited for such installments of $125.00 paid to [C.C.M.] attributable to college expenses upon proof of same and a judicial determination of such credit.

■ [Father]'s duty of contribution for the academic years 2003–04 and 2004–05 should be 35% of those educational expenses not covered by scholarships or grants, to include tuition, room and meals, books, fees and travel expenses. [Father]'s contribution should not exceed $4,000.00 per academic year. [Father] should pay two installments of $2,000.00 to [C.C.M.] on or before August 15 and December 15 for each academic year. An accounting should be

made at the conclusion of each academic year by [C.C.M.] and any surplus paid by [Father] should be remitted to him....

(Appellant's App. at 62–65.) Father appeals.

## DISCUSSION AND DECISION

 Father asserts the trial court's requirement that he contribute toward C.C.M.'s education at Cornell University was clearly erroneous. We review a trial court's apportionment of college expenses for clear error. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind.1992). Accordingly, we will affirm the judgment unless it "is clearly against the logic and effect of the facts and circumstances which were before" the court. *Id.*

Regarding support orders for college expenses, our legislature has provided:

(a) The child support order or an educational support order may also include, where appropriate:

(1) amounts for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses....

Ind.Code § 31–16–6–2.

In addition, the commentary to the Child Support Guidelines explains:

The data upon which the Guideline schedules are based include a component for ordinary educational expenses. Any extraordinary educational expenses incurred on behalf of a child shall be considered apart from the total basic child support obligation.

Extraordinary educational expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.

\* \* \* \* \* \*

b. Post–Secondary Education. The authority of the Court to award post-secondary educational expenses is derived from IC 31–16–6–2. It is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

If the Court determines that an award of post-secondary educational expense is appropriate, it should apportion the expenses between the parents and the child, taking into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These sources of assistance should be credited to the child's share of the educational expense.

\* \* \* \* \* \*

The court may limit consideration of college expenses to the cost of state supported colleges and universities or otherwise may require that the income level of the family and the achievement level of the child be sufficient to justify the expense of private school.

Commentary, Child Support Guideline 6 (1998).

The trial court's order indicates that it considered the factors required by the statute. The court considered C.C.M.'s academic successes in high school and at Cornell. (*See* Findings 5 & 7 and Conclusion 1.) The court took into account C.C.M.'s ability to contribute. (*See* Findings 8 & 9 and Conclusions 1 & 2.) The court also considered the ability of Mother and Father to meet the expenses. (*See* Findings 11–16 and Conclusion 3.)

In addition, the court's order indicates it considered the factors discussed in the commentary to the Child Support Guidelines. The court capped Father's contribution at one-third the cost of a state supported university in Indiana. (*See* Conclusion 3.) The court considered C.C.M.'s ability to excel at Cornell University and his desire to attend a top-flight university. (*See* Conclusion 1.) By requiring C.C.M. to be responsible for 1/3 of the expenses remaining after grants and scholarships, the court made payment for C.C.M.'s education a "group effort" and "apportion[ed] the expenses between the parents and the child." [4] Commentary, Child Supp. G. 6. (*See* Conclusion 2.)

Nevertheless, Father claims the trial court's decision was clearly erroneous because C.C.M. could have received a "free ride" at a state university in Indiana and then Father would not have had to pay any college expenses. C.C.M. did not apply to any universities in Indiana, so the validity of Father's expectation that C.C.M. could have received a full scholarship is uncertain. Father's belief was based on conversations with unnamed individuals at the Indiana Academy, whom we have no reason to believe could have guaranteed a full scholarship to an Indiana university. Accordingly, the trial court's refusal to relieve Father of all financial responsibility was not clearly erroneous.

Father also argues:

[M]other and [C.C.M.] unilaterally chose a private school even though there was joint custody which: 'means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, healthcare, and religious training.' Ind. Code § 31–9–2–67.

(Br. of Appellant at 10.) We find Father's argument somewhat misplaced. The record indicates C.C.M. tried, from December 2000 forward, to include Father in his decision-making process regarding college, but Father failed to respond to C.C.M.'s phone calls or requests for assistance. Rather, the first time C.C.M. and Father discussed the matter was when they encountered one another in a local store in May of 2001, after C.C.M. had already accepted an offer to attend Cornell University. Father also admitted he does not communicate with Mother regarding C.C.M.'s upbringing. Father had his attorney send a letter to Mother's attorney in which he refused to provide financial information to universities outside Indiana, based in part upon the additional cost of such schools. However, that communication did not take place until February 15, 2001. If Father had engaged in the decision-making process with his son and explained the financial constraints to C.C.M. during the time C.C.M. was filling out applications for col-

4. In fact, Father fared better than he might have on this factor, because the trial court could have "credited to the child's share of the educational expense" all monies from "scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student." Commentary, Child Supp. G. 6. Rather than crediting all the scholarships against C.C.M.'s portion and dividing the remainder between Mother and Father, the trial court divided the remaining expenses between Mother, Father, and C.C.M.

leges, we might look more favorably on Father's complaint that he was not included in the decision-making process.

In addition, we note that Father testified at the hearing that he was willing to contribute three thousand dollars a year toward C.C.M.'s education at Cornell University. (*See* Tr. at 181–82) ("I am already paying fifteen hundred dollars a year here. I would be glad to contribute another fifteen hundred. . . ."). Accordingly, he may not challenge that portion of the trial court's order. *See Clark v. Madden,* 725 N.E.2d 100, 105 (Ind.Ct.App.2000) (holding father could not challenge trial court order that he hire a nanny when father had offered to do so at the custody hearing). Given the trial court's order requires him to pay, at most, one thousand dollars a year more than he expressly stated he was willing to pay, we decline to find the trial court's apportioning of college expenses clearly erroneous.

Father offered to pay three thousand dollars a year toward C.C.M.'s college education at Cornell University. The trial court ordered him to pay 35% of costs not covered by scholarships or grants, but it capped the amount he could be required to pay at $4,000.00 per year, which represents less than one-third of the agreed cost of an education at a state supported university in Indiana. As the cost of attending Cornell University is nearly $40,000.00 per year, the court's order makes Father responsible for approximately 10% of the cost of C.C.M.'s college attendance. The trial court's apportionment of college expenses is not clearly erroneous.

Affirmed.

SULLIVAN, J., and VAIDIK, J., concur.