ROBERT G. MERTZ, Appellant-Respondent,
v.
DENISE A. MERTZ, Appellee-Petitioner.
No. 29A04-0511-CV-644
Court of Appeals of Indiana.
August 24, 2006
JUDITH N. STIMSON, Broyles Kight & Ricafort, LLP, Indianapolis, Indiana, ATTORNEY FOR APPELLANT.
EDWARD P. GRIMMER, Edward P. Grimmer, P.C., Crown Point, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM DECISION
BAILEY, Judge.

Case Summary
Robert G. Mertz ("Father") appeals, and Denise A. Mertz ("Mother") cross-appeals, challenging a court order modifying child support and ordering the payment of college expenses for their eldest child. We affirm.

Issues
Father raises three issues, and Mother raises four, which we consolidate and restate as the following issues:
I. Whether the trial court properly imputed income to Father in determining his gross income available for child support purposes;
II. Whether the trial court abused its discretion by allowing claimed business expenses as a reduction to Father's self-employment income;
III. Whether the trial court clearly erred in the apportionment of educational expenses;
IV. Whether the trial court abused its discretion in modifying Father's basic child support obligation; and
V. Whether the trial court erred by refusing to find Father in contempt of court due to late child support payments.

Facts and Procedural History
Father and Mother were divorced on January 11, 1994. They are the parents of two children, Stephanie, born April 14, 1987, and J.M., born December 2, 1991.
On October 6, 2004, Mother, the custodial parent, filed a petition to modify child support and a petition for issuance of a rule to show cause. On January 10, 2005, Father petitioned for modification of custody and moved for a consolidated hearing on all pending matters.
The trial court conducted hearings on February 4, 2005, March 11, 2005, May 4, 2005 and July 27, 2005. At the final hearing, Father withdrew his petition for custody modification. Evidence adduced at the hearings indicated that Stephanie was admitted to IUPUI, commencing with the fall semester of 2005. She had secured summer employment at a water park. Father, a manufacturing equipment sales representative, had been discharged by a former employer, and reported a substantial decrease in sales commissions. Mother had lost a position as an office manager due to a decline in the steel industry in northern Indiana, and was working for lower wages as an administrative assistant.
On August 5, 2005, the trial court entered an order on the pending motions, modifying child support, and allocating college expenses among Mother, Father, and Stephanie. The trial court found "sufficient substantial compliance [by Father] so as to be unable to find a willful disregard of the Court's order" and declined to hold Father in contempt of court. (App. 26.)
On September 6, 2005, Father filed a motion to correct error. On October 4, 2005, Mother filed a brief in response to the motion to correct error, with a "cross-assignment of errors." (App. 60.) On October 10, 2005, the trial court entered an order addressing an omitted issue of savings bonds, but otherwise declining to modify the order of August 5, 2005. This appeal ensued.

Discussion and Decision

I. Imputation of Income
Father challenges the trial court's decision to attribute $70,000.00 of income to him in its calculation of his income available for child support. The Indiana Child Support Guidelines broadly define "weekly gross income" as actual weekly gross income of the parent if he or she is employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits. Ind. Child Support Guideline 3(A)(1).
When determining whether and in what amount potential income should be attributed to a parent because of his or her voluntary underemployment, courts should consider the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. Carmichael v. Siegel, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001). The trial court's decision to impute income may discourage a parent from taking a lower-paying job in order to avoid the payment of child support or fairly allocate the support obligation when one parent chooses to be unemployed or underemployed because of additional household income. Id. Nevertheless, there is no basis for determining that a parent is underemployed when the level of his or her earnings has remained relatively constant over a number of years. Id. at 626. When we review the calculation of a parent's income, we will not reverse the trial court's finding unless it is clearly erroneous. Eppler v. Eppler, 837 N.E.2d 167, 173 (Ind. Ct. App. 2005), trans. denied.
Mother strenuously argues that Father, who formerly earned sales commissions of six figures, is now "voluntarily underemployed" as contemplated by the Guidelines because his lack of effort caused his termination by an employer with lucrative sales accounts. However, we need not decide whether poor job performance is equivalent to voluntary underemployment, because it appears that the trial court primarily relied upon Father's receipt of in-kind income[1] to justify the imputation of income:
In regards to the Father's weekly child support obligation, the Court finds that there is no question that Father's yearly adjusted gross income, as reflected by his tax returns, has decreased significantly since the last support order was entered. Respondent's Verified Petition to Modify Support is therefore granted. However, the same issues that have plagued the Respondent and which were noted in the Court's March 14, 2000, and February 4, 2003, orders remain. The Respondent's record keeping remains suspect, for all the reasons previously stated in those orders. In addition, the Respondent has taken the unusual step of turning all income over to his "significant other," Jennifer Means, who then pays all bills. This has effectively insulated the Respondent from any responsibility from personally maintaining any documentation regarding bank accounts, including checks, deposits, and payments. While the Court draws no inference from the lack of documentation since either party could have taken steps to procure the information, the arrangement itself is not seen as a positive response to the concerns previously expressed by the Court in its orders.
Although the Respondent blames a change in the economy from his peak earning years, as well as the loss of two key accounts, the fact remains that he is still severely under-utilizing his earning capacity. It is also undeniable that the Respondent has not had the incentive to be employed to full capacity in recent years. In the year 2000-2001, the last of Respondent's high earning years, he was married to a spouse who was earning approximately $130,000 in wages according to 2000-2001 tax returns. More recently, the Respondent has been supported by Ms. Means. He lives in her home, he drives her car, he vacations in her condominiums, and she pays all of his bills. From the Respondent's own verified financial declaration, these bills equal $5,760.17 per month less the one bill that he does pay, a cellular phone bill in the amount of $412.83. Applied over 12 months, the amount exceeds $64,000. This is consistent with Ms. Means' testimony that she "had to" pick up the shortfall from the Respondent's two lost accounts. These lost accounts total $72,000 to $73,000 in 2003 per the Respondent's testimony.
Based upon all these factors, the Court finds that there should be imputed income of $70,000 to the Respondent's declared $21,117 adjusted gross income for 2004 to arrive at the clear potential that the Respondent has to earn $90,000 to $100,000 per year and above.
(App. 24-25.)
The record reveals that Father tendered all his earnings to Ms. Means, and she deposited those earnings into her bank account. She was then solely responsible for the mortgage on the home they shared (but deeded in her name only), daily living expenses, maintenance and repair, vehicle expenses for the vehicle owned by Ms. Means and driven by Father, vacation expenses, expenses for a condominium in Florida they sometimes occupied (owned by Ms. Means and two other individuals), and other miscellaneous expenses. Although Ms. Means expressed hope that Father would someday repay her for his half of their bills, he was not contractually obligated to do so. Father's financial declaration and Ms. Means' testimony that she compensated for the loss of former sales accounts support the trial court's determination that the amount of expenditures paid on Father's behalf are approximately equal to the $70,000.00 of sales commissions he had previously been able to generate on two former accounts. Accordingly, the trial court's imputation of income is within the bounds of the evidence presented and is not clearly erroneous.
Father also claims that income could not be imputed to him unless income was imputed to Mother, as parents may not be treated in a disparate manner. He acknowledges that Mother had lost employment due to circumstances outside her control, and that her successive employment paid less. Nevertheless, Father does not provide authority for the proposition that income may be imputed after a decrease in wages, absent evidence of some additional circumstances indicating that the decision to accept and maintain lower income was voluntary.

II. Business Expenses
Mother contends that the trial court should have disallowed all of Father's business expenses reflected on his 2004 federal tax return because "Father did not submit a calculation of his gross receipts minus ordinary and necessary expenses." Appellee's Br. at 8. At trial, Mother did not specifically request that the trial court disallow all Father's claimed business expenses in its calculation of Father's gross income available for child support. She may not do so for the first time on appeal. See Leisure v. Wheeler, 828 N.E.2d 409, 417 n.3 (Ind. Ct. App. 2005). Waiver notwithstanding, Mother's position that self-employment income can be generated without any related expenses is untenable. She has not demonstrated an abuse of discretion by the trial court in this regard.

III. Educational Expenses Order
In its educational expenses order, the trial court determined that Stephanie would be responsible for $4,250.00 annually (with $1,000.00 of that amount derived from a scholarship awarded to her). Father would contribute 80.8371% and Mother would contribute 19.1629% of the balance of educational expenses "defined as the documented actual cost for tuition, housing, board, required fees, and books." App. 23. Mother challenges the order, contending that Stephanie was required to contribute an unfair amount.
Indiana Code Section 31-16-6-2, governing educational support, provides in pertinent part as follows:
(a) The child support order or an educational support order may also include, where appropriate:
(1) amounts for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account:
(A) the child's aptitude and ability;
(B) the child's reasonable ability to contribute to educational expenses through:
(i) work;
(ii) obtaining loans; and
(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and
(C) the ability of each parent to meet these expenses[.]
A parent is under no absolute legal duty to provide a college education for his or her children. Snow v. Rincker, 823 N.E.2d 1234, 1237 (Ind. Ct. App. 2005), trans. denied. Nevertheless, a court may order a parent to pay part or all of such costs when appropriate. Id. Decisions to order the payment of extraordinary educational expenses are reviewed under an abuse of discretion standard, while apportionment of expenses is reviewed under a clearly erroneous standard. Id. The trial court has discretion to determine what is included in educational expenses. Id. at 1239-40.
In challenging the apportionment of $4,250.00 annually to Stephanie, Mother argues that Stephanie should not be required to work because she needs to maintain a C average in college, and that the trial court should not have considered Stephanie's savings account available for the payment of tuition. In Mother's opinion, Stephanie should have been allowed to spend her savings account for a vehicle. Nevertheless, Mother's arguments fall short of establishing clear error by the trial court in its apportionment of college expenses.

IV. Modification of Basic Child Support Order
Father's basic child support obligation was reduced, upon the trial court's determination that Stephanie would be in Mother's home 32.6923% of the year. Although it is somewhat difficult to discern Mother's contention on basic child support, it appears that she believes that no reduction should have been made because she cannot expect to find lower cost housing readily available after Stephanie's move to college.
The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. Tebbe v. Tebbe, 815 N.E.2d 180, 183 (Ind. Ct. App. 2004), trans. denied. In any family who sends a child away to college, the means available to the parents for the payment of in-home expenses are somewhat reduced because of the funds expended to educate, house, and feed the child on campus. Here, it was entirely appropriate for the trial court to take into account the circumstance that Stephanie would be living in IUPUI housing, and eating her meals there, for the majority of the calendar year. We find no abuse of discretion in the modification of basic child support.

V. Finding of Substantial Compliance Rather than Contempt
Finally, Mother challenges the trial court's finding that Father substantially complied with the order to pay child support and was not in contempt of court.[2] Father submitted into evidence a child support payment history from the Hamilton County Clerk's office, disclosing that Father was not in arrears in child support but also disclosing that payments were often made more than one week apart. Father testified that he paid on an irregular schedule, sometimes in advance, because his income was from self-employment commissions and was thus erratic. Mother objected that the trial court's order specified weekly payments, but conceded that Father was current on his child support as of the hearing. As such, there is evidentiary support for the trial court's finding of no contempt.

Conclusion
Neither Father on appeal, nor Mother on cross-appeal, has demonstrated reversible error in the trial court's order for the payment of educational expenses and modification of basic child support.
Affirmed.
RILEY, J., and MAY, J., concur.
NOTES
[1] In-kind benefits a parent receives "that reduce his or her living expenses" may be imputed as income. Ind. Child Support Guideline 3(A), cmt. 2.
[2] Generally, money judgments are not enforceable by contempt. Pettit v. Pettit, 626 N.E.2d 444, 447 (Ind. 1993). However, the proscription against imprisonment for debt in Article I, Section 22 of the Indiana Constitution does not prevent the use of contempt to enforce child support obligations. Id. at 445. "[C]ontempt is always available to assist in the enforcement of child support, at least in respect of unemancipated children, including orders to pay accrued arrearages and money judgments against delinquent parents for past due amounts." Id. at 447. The trial court has authority to use its contempt power only when the parent has the ability to pay the support due and his failure to do so was willful. Id. at 448.